Fox v. NHSP Warden                    04-CV-193-SM  05/09/05
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Earle K. Fox, III,
      Petitioner

      v.                                Case No. 04-cv-193-SM
                                        Opinion No. 2005 DNH 079
Bruce Cattell, Warden,
New Hampshire State Prison,
      Respondent


                            O R D E R


      Earle K. Fox, III, a state prisoner serving three

consecutive sentences resulting from convictions for being a

felon in possession of a firearm,[1] petitions for a writ of habeas

corpus.  18 U.S.C. § 2254.  After preliminary review by the

Magistrate Judge, Fox's petition consists of only one claim: that

his Fourteenth Amendment right to due process was violated when

he was denied a second psychiatric evaluation and expert

assessment of his competency to stand trial.  Before the court is

respondent's motion for summary judgment to which petitioner has

objected.  For the reasons set forth below, respondent's motion

for summary judgment is granted.

_____

      [1] Petitioner's fourth conviction resulted in a suspended
sentence.

**BACKGROUND**

The procedural and historical background to Fox's petition is set out in detail in the Magistrate Judge's order dated July 13, 2004 (document no. 3). In brief, Fox was tried in the New Hampshire Superior Court (Hillsborough County, Southern District) on four counts of being a felon in possession of a firearm. Before petitioner was tried, the court held a hearing on his competency to stand trial. Dr. James J. Adams, a court-appointed psychiatrist testified. After reviewing the competency evaluation prepared by Dr. Adams, which concluded that Fox "had a rational understanding of the proceedings that he was facing and the present ability to meaningfully communicate with trial counsel," the state court ruled that Fox was competent to stand trial. State v. Fox, Nos. 00-S-114 through 117, 01-S-33 through 38, 02-S-18 through 32 and 02-S-191, slip op. at 2 (N.H. Super. Ct. Hillsborough Cty., So. Dist., July 17, 2002). Fox was tried, convicted, and sentenced to a term of imprisonment at the New Hampshire State Prison.

Fox appealed his conviction to the New Hampshire Supreme Court. In his notice of appeal Fox claimed, inter alia, that the trial court abused its discretion when it refused to grant his

2

request for a second psychiatric evaluation and assessment of his competency to stand trial.  The Supreme Court affirmed Fox's conviction in an opinion that did not address his argument concerning a second competency evaluation.  State v. Fox, 150 N.H. 623, 626 (2004).

Fox then filed a petition for a writ of habeas corpus in this court, asserting that the denial of a second psychiatric evaluation violated his Fourteenth Amendment right to due process.

**THE LEGAL STANDARD**

Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("ADEPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners.  A federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of,

3

clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

"AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings.'" Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003)). "If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo." Norton, 351 F.3d at 5 (citation omitted).

Here, respondents appear to concede that petitioner's claim, while exhausted, was never adjudicated on the merits. Accordingly, the court reviews petitioner's claim de novo.

It is, perhaps, open to question whether petitioner's claim is, in fact, exhausted. Generally, "a habeas petitioner in state custody may not advance his or her constitutional claims in a federal forum unless and until the substance of those claims has been fairly presented to the state's highest court." Barresi v.

4

Maloney, 296 F.3d 48, 51 (1st Cir. 2002). "To carry that burden, the petitioner must show that 'he tendered his federal claim [to the state's highest court] in such as way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Id. (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)).

Claim 2 of petitioner's Notice of Appeal, states, in its entirety:

> Whether the trial court abused its discretion in refusing the defendant's request for a second evaluation and expert analysis of Mr. Fox's competency to stand trial based on his inability to work effectively with Mr. Fox in preparing a defense. The defense sought a second evaluation, given his long history of mental illness and treatment. The State's expert, Dr. James Adams, failed to obtain any records concerning Mr. Fox's prior treatment.

(emphasis added). In his Notice of Appeal, petitioner cites one United States Supreme Court case, Ake v. Oklahoma, 470 U.S. 68 (1985), which stands for the proposition that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a

psychiatrist's assistance on this issue if the defendant cannot otherwise afford one."  Id. at 74 (emphasis added).

While Claim 2 does not mention the United States Constitution, Claims 1 and 3 invoke the Fourth Amendment, and Claim 4 the Sixth Amendment.  (The remaining claim in the Notice of Appeal raises a sufficiency of the evidence argument.)  Given petitioner's explicit references to constitutional provisions in Claims 1, 3, and 4, and the lack of a reference to the due process clause in Claim 2, a reasonable jurist might not have recognized Claim 2 as raising a federal constitutional question.  But, given respondent's apparent concession and the closeness of the issue, the court will resolve the doubt in petitioner's favor and treat the claim as exhausted.

## DISCUSSION

Fox says the trial court's denial of a second psychiatric evaluation and expert analysis of his competency to stand trial violated his Fourteenth Amendment right to due process.

As the Supreme Court has explained, "[t]he rule that a criminal defendant who is incompetent should not be required to

6

stand trial has deep roots in our common-law heritage," and that "[i]f a defendant is incompetent, due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him." Medina v. California, 505 U.S. 437, 448 (1992) (holding that due process guarantee is not violated by placing burden on defendant to prove incompetency to stand trial).

Supreme Court precedent in this area is generally limited to cases determining whether particular procedural safeguards provided by state law are sufficient to protect a defendant's federal constitutional rights. See, e.g., Drope v. Missouri, 420 U.S. 162, 172 (citing United States v. Knohl, 379 F.2d 427, 434-5 (1967); United States ex rel. Evans v. LaVallee, 446 F.2d 782, 785-6 (1971)). In Drope, the Court explained that

> [t]he Court [in Pate v. Robinson, 383 U.S. 375, 385-6 (1966)] did not hold that the procedure prescribed by [the state statute] was constitutionally mandated, although central to its discussion was the conclusion that the statutory procedure, if followed, was constitutionally adequate. . . . Nor did the Court prescribe a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure.

7

<u>Drope</u>, 420 U.S. at 172.

At issue in <u>Drope</u> was the constitutionality of a Missouri statute that requires "a judge or magistrate [to], 'upon his own motion or upon motion filed by the state or by or on behalf of the accused,' order a psychiatric examination whenever he 'has reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed.'"  420 U.S. at 173 (quoting Mo. Rev. Stat. § 552.020(3) (1969)).  In addition, under the Missouri statute, the trial court must hold a competency hearing "if the opinion relative to the fitness to proceed [with trial] . . . is contested."  <u>Drope</u>, 420 U.S. at 172.  However, the statute "does not authorize a second examination at state expense.  Instead [the statute] provides that a second examination is to be made by a physician, chosen and paid by the party making the request."  <u>Williams v. Wyrick</u>, 664 F.2d 193, 194 (8th Cir. 1981) (citing Mo. Rev. Stat. § 552.020; <u>State v. Williams</u>, 603 S.W.2d 562, 565 (Mo. 1980)).

The Supreme Court held that the Missouri procedure "is, on its face, constitutionally adequate to protect a defendant's right not to be tried while legally incompetent."  420 U.S. at

8

173. The Eighth Circuit later explained that although Missouri's procedures merely permitted, but did not guarantee, an indigent defendant the right to a second evaluation, "the [F]ourteenth [A]mendment does not require absolute equality or precisely equal advantages, as long as the differences do not amount to a denial of due process or invidious discrimination." Williams, 664 F.2d at 194. The court of appeals held that the Missouri statute does "not deny an indigent [person] an adequate or meaningful opportunity to present his [or her] incompetency, but instead safeguard the indigent's right that he [or she] will not be tried while incompetent," id., because the psychiatrists "appointed to examine [a defendant are] not witnesses for the prosecution, but impartial third parties appointed by the court." Id. Thus, absent any evidence "to show that the [psychiatrists] were incompetent, biased, or prejudiced, or that their procedures were invalid or improper," the Missouri statute sufficiently protects the due process rights of an indigent defendant. Id.

The reasoning of Williams applies with equal force in this case. Here, N.H. REV. STAT. ANN. § 135:17 (2005) provides that:

> [w]hen a person is charged or indicted for any offense
> . . . if a plea of insanity is made in court, or said
> court is notified by either party that there is a

9

> question as to the competency or sanity of the person, [the court] may make such order for a pre-trial psychiatric examination of such person by a psychiatrist on the staff of any public institution or by a private psychiatrist as the circumstances of the case may require . . .

Much like the constitutionally adequate Missouri statute, the New Hampshire statute provides for a neutral, third party psychiatric evaluation of the defendant's competency to stand trial upon notice that the defendant's competency is at issue. New Hampshire's statute actually affords greater protection to criminal defendants than does the Missouri statute, by placing the burden of proving incompetency to stand trial on the state, see State v. Haycock, 146 N.H. 5, 5 (2001); State v. Bertrand, 123 N.H. 719, 727 (1983), while the Missouri statute places the burden "on the party raising the issue." Mo. Rev. Stat. § 552.020(8).

Because the New Hampshire statute is substantially similar to the constitutionally adequate Missouri statute in all material respects, and because Fox offers no evidence "to show that the [psychiatrist who examined him was] incompetent, biased, or prejudiced, or that [the psychiatrist's] procedures were invalid or improper," the New Hampshire statute adequately protects the

10

Fourteenth Amendment rights of criminal defendants both on its face, and as applied to petitioner.

In his objection to summary judgment, petitioner relies on Ake v. Oklahoma, 470 U.S. 68 (1985), to suggest that he was legally entitled to a second psychiatric evaluation to determine his competence to stand trial. In Ake, an indigent criminal defendant had been denied access to a psychiatrist even though the defendant's mental state at the time of the offense was a key component of his defense. 470 U.S. at 72. The court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on the issue if the defendant cannot otherwise afford one." Id. at 74. Thus, Ake involved a defendant establishing incompetence at the time the alleged crime was committed rather than, as here, at the time of trial. Id. at 70. Establishing incompetence at the time of the offense, however, is different than establishing incompetence to stand trial. See Medina, 505 U.S. at 448 ("In a competency hearing, the 'emphasis is on [the defendant's] capacity to consult with counsel and to comprehend the proceedings, and . . . this is by

11

no means the same test as those which determine criminal responsibility at the time of the crime.'") (quoting <u>Pate</u>, 383 U.S. at 388-89 (Harlan, J., dissenting)).

Moreover, while <u>Ake</u> has been extended somewhat beyond its own facts, <u>see</u>, <u>e.g.</u>, <u>Terry v. Rees</u>, 985 F.2d 283, 284 (6th Cir. 1993) (denial of access to "independent pathologist in order to challenge the government's position as to the victim's cause of death" deemed a violation of due process), no court has ruled that <u>Ake</u> mandates what petitioner here now claims as his constitutional right: an expert assessment of his competency to stand trial in addition to that provided by the court-appointed expert who testified at the pre-trial competency hearing. Rather, while <u>Ake</u> requires that an indigent criminal defendant be provided with the assistance of a psychiatric expert to mount an affirmative defense of insanity, <u>Medina</u> suggests that when a criminal defendant's capacity to stand trial is at issue, due process is satisfied by giving the defendant "<u>access to procedures</u> for making a competency evaluation." 505 U.S. at 449 (emphasis added). Here, petitioner was not given the assistance of his own psychiatric expert but, unquestionably, he was

12

provided with "access to procedures for making a competency evaluation."  Id.

Finally, if due process does not require a second psychiatrist at government expense when the defendant has the burden of proving his incompetence to stand trial, as in Missouri, see Williams, 664 F.2d at 194, due process surely does not require the provision of such services where, as here, the burden of proof is on the state to establish that a defendant is competent.

Because petitioner has identified no constitutional or other federally established right to a second psychiatric evaluation, he is not entitled to habeas corpus relief.

**CONCLUSION**

For the foregoing reasons, respondent's motion for summary judgment (document no. 9) is granted, and Fox's petition for a writ of habeas corpus is dismissed.  The clerk of the court shall enter judgment in accordance with this order and close the case.

13

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 9, 2005

cc:  Michael J. Sheehan, Esq.
     Nicholas P. Cort, Esq.

14